Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Western District of Michigan

## Southern Division

<table>
<tr><td>

Shawnda Jackson

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

EVERY Woman's Place;
Jillian Pastoor
Molly Hruskach
Ebony Williams
_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☑Yes  ☐No

**1:26-cv-1656**
**Robert J. Jonker**
**U.S. District Judge**

</td></tr>
</table>

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name: Shawnda Jackson

Street Address: 1387 Creek Dr. Apt. A

City and County: Muskegon, Muskegon County

State and Zip Code: Michigan, 49441

Telephone Number: 404) 805-3253

E-mail Address: wezmichael@gmail.com

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Page 1 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name — Every Woman's Place

Job or Title (if known) — Organization

Street Address — 1221 W. Laketon Avenue

City and County — Muskegon, Muskegon County

State and Zip Code — Michigan, 49441

Telephone Number — 231-759-7909

E-mail Address (if known)

Defendant No. 2

Name — Jillian Pastoor

Job or Title (if known) — Former Executive Director

Street Address — 1221 W. Laketon Avenue

City and County — Muskegon, Muskegon County

State and Zip Code — Michigan, 49441

Telephone Number — 231-759-7909

E-mail Address (if known)

Defendant No. 3

Name — Molly Hruskach

Job or Title (if known) — Human Resources Dir. & Interim Exe. Dir.

Street Address — 1221 W. Laketon Avenue

City and County — Muskegon, Muskegon County

State and Zip Code — Michigan, 49441

Telephone Number — 231-759-7909

E-mail Address (if known)

Defendant No. 4

Name — Ebony Williams

Job or Title (if known) — Program Director

Street Address — 1221 W. Laketon Avenue

City and County — Muskegon, Muskegon County

State and Zip Code — Michigan, 49441

Telephone Number — 231-759-7909

E-mail Address (if known)

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal question            ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case. Title VII of Civil rights Act of 1964, 42 U.S.C. § 2000e seq. (Race discrimination); Fair labor standards Act, 29 U.S.C. § 201 et seq.; Supplemental Jurisdiction over state law claims under the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq. and the Michigan Payment of Wages and Fringe Benefits Act, MCL § 408.471 et seq.; Pursuant to 28 U.S.C. § 1367.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the

State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated

under the laws of the State of *(name)* _____ .

and has its principal place of business in the State of *(name)*

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of

the State of *(name)* _____ . Or is a citizen of

*(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Plaintiff claims exceed $75,000 excluding interest and costs, including approximately $54,672.00 in unpaid lost wages, ongoing wage gap losses, emotional distress damages, physical health damages, and punitive damages.

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed. See attached Complaint for damages for full statement of claims. Plaintiff brings claims for race discrimination, retaliation, hostile work environment, constructive discharge, unpaid wages, and unlawful exemption reclassification under Title VII, the FLSA, the Michigan Elliott-Larsen Civil Rights Act, and the Michigan Payment of wages and Fringe Benefits Act. Full actual allegations and 10 counts are set forth in the attached complaint.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. Plaintiff seeks compensatory damages including approximately $33,392.00 in unpaid comp time and $21,280.00 in withheld stipends, lost wages, emotional distress damages, punitive damages, physical health damages, attorney fees, and all other relief deemed appropriate by the court. Full relief requested is set forth in the attached complaint.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   May 21, 2026

Signature of Plaintiff

Printed Name of Plaintiff    Shawnda Jackson

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

Print      Save As...      Add Attachment      Reset

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SHAWNDA JACKSON,**
    Plaintiff,

Case No.: _____

v.

Hon. _____

**EVERY WOMAN'S PLACE;**
**JILLIAN PASTOOR;**
**MOLLY HRUSKACH;**
**EBONY WILLIAMS,**

    Defendants.

_____/

## COMPLAINT

NOW COMES Shawnda Jackson, Plaintiff, by and through herself as a pro se litigant, and brings this action against Every Woman's Place and the named Defendants for race discrimination, retaliation, hostile work environment, wage-related violations, and unlawful employment conduct arising during her employment as Sexual Assault Advocacy Coordinator.

Plaintiff alleges that after raising concerns regarding workplace policies, compensation practices, and discriminatory treatment, she was subjected to retaliatory discipline, unequal treatment, uncompensated labor, and a hostile work environment. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101 et seq., and the Michigan Payment of Wages and Fringe Benefits Act ("PWFBA"), MCL § 408.471 et seq.

## PARTIES

1. Plaintiff Shawnda Jackson is an African American woman residing at 1387 Creek Dr., Apartment A, Muskegon, Michigan 49441.

2. Defendant Every Woman's Place is an organization conducting business in Muskegon, Michigan.

3. Defendant Jillian Pastoor served as Executive Director of Every Woman's Place during the relevant period.

4. Defendant Molly Hruskach served as Human Resources Director and Interim Executive Director during the relevant period.

5. Defendant Ebony Williams served as Programs Director during the relevant period.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims under the Michigan Elliott-Larsen Civil Rights Act and the Michigan Payment of Wages and Fringe Benefits Act pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Western District of Michigan.

9. Plaintiff exhausted administrative remedies through the Equal Employment Opportunity

Commission ("EEOC") and received a Notice of Right to Sue. The claims asserted herein are within the scope of Plaintiff's EEOC charge.

## FACTUAL ALLEGATIONS

10. Plaintiff was employed by Every Woman's Place from approximately June 3, 2022 through January 11, 2026 as Sexual Assault Advocacy Coordinator.

11. Plaintiff's responsibilities included crisis response, SANE call coverage, overnight hospital advocacy, facilitating groups, training staff, supporting clients, and additional responsibilities beyond her formal job description.

12. Plaintiff alleges that she carried a disproportionate workload compared to similarly situated non-Black employees, including primary responsibility for on-call and SANE response duties.

13. The Executive Director and Human Resources leadership positions at Every Woman's Place during the relevant period were held by Caucasian individuals. Plaintiff alleges differential treatment with respect to compensation, discipline, workload, and workplace support compared to similarly situated non-Black employees.

14. The Every Woman's Place Staff Member Handbook dated June 2019 stated that employees assigned on-call duty would receive one hour of comp time for each day on call.

15. Plaintiff alleges that despite being continuously assigned substantial on-call responsibilities 24 hours a day, 7 days a week, 365 days a year — including all holidays — from June 3, 2022 through November 7, 2025, the comp time policy described in the handbook was never honored. Every Woman's Place issued a revised handbook on November 7, 2025 removing that policy entirely.

16. Plaintiff's on-call obligations required her to remain continuously available and respond to crisis calls within approximately 15 minutes of being contacted. Plaintiff received calls at all hours including midnight, 1:00 a.m., 2:00 a.m., 3:00 a.m., and 6:00 a.m., and was required to respond regardless of the time. These obligations significantly restricted Plaintiff's ability to sleep, travel, attend personal events, or otherwise engage in normal personal activities. On occasions including attendance at movies and family gatherings, Plaintiff was required to stop and immediately respond to crisis calls.

17. Plaintiff further alleges that she was denied regular receipt of a promised weekly on-call stipend despite performing the majority of on-call responsibilities.

18. On October 11, 2022, an organizational email announced that advocates assigned on-call duty would receive an approximate weekly stipend of $133.00 in addition to regular salary.

19. Plaintiff built the on-call team from the ground up, personally trained all rotation members, and was the primary and default responder for all on-call obligations. Plaintiff alleges she received the stipend fewer than ten times between November 1, 2022 and January 11, 2026, despite regularly carrying primary on-call responsibilities. Other rotation members received the stipend regularly — including during weeks when they did not respond to any calls. Leadership explicitly told rotation members that Plaintiff would handle all calls, meaning teammates were compensated for availability without performing the corresponding work. The only exceptions to Plaintiff's response obligation were illness, a personal emergency, being with her grandchild, or the rare circumstance of two simultaneous calls at the hospital — an event that never occurred during Plaintiff's employment.

20. Plaintiff alleges that when she attempted to add her name to the on-call schedule in order to receive the $133 stipend, she was told she could only receive it if she covered both domestic violence and sexual assault on-call duties. Since Plaintiff's role was Sexual Assault Advocacy Coordinator, this condition was used as a pretext to deny her the stipend while continuing to require her to perform all sexual assault on-call work.

21. Plaintiff alleges that in November 2024 her compensation structure was altered without written agreement and that the weekly stipend was effectively eliminated and replaced with a substantially smaller salary increase. Specifically, after Plaintiff raised the comp time policy on Page 15 of the handbook, Defendant Molly Hruskach stated in a meeting with Defendant Ebony Williams present that she did not know why the policy was in the handbook and that the organization could not honor it. Leadership verbally agreed to pay Plaintiff $133 per week going forward but put nothing in writing. When the pay period ended and Plaintiff submitted her timecard expecting payment of $266.00 — two weeks at $133.00 — she was called into the office and told she would receive a $2,000 raise

instead and that the $266.00 already earned would not be paid. Plaintiff's follow-up email regarding the $266.00 was never answered.

22. Plaintiff raised concerns regarding workplace treatment, compensation practices, and policy violations.

23. On June 20, 2025, Plaintiff submitted a formal workplace complaint regarding treatment and policy concerns.

24. On the same date Plaintiff submitted her complaint, Defendant Ebony Williams issued Plaintiff a Written Warning, which Plaintiff alleges was retaliatory.

25. Four days later, on June 24, 2025, Defendant Jillian Pastoor issued Plaintiff a Performance Improvement Plan threatening termination.

26. Plaintiff alleges the disciplinary actions taken shortly after her complaint were retaliatory and connected to her protected activity.

27. Plaintiff further alleges that after she raised concerns regarding the handbook policy, Every Woman's Place issued a revised handbook on November 7, 2025 removing the prior comp time language and reclassifying Plaintiff's position as exempt.

28. Plaintiff alleges that the timing of the handbook revision — occurring after Plaintiff raised compensation concerns — supports her claim of retaliation and that the exempt reclassification was not based on a good-faith analysis of Plaintiff's actual job duties under applicable law.

29. Plaintiff alleges that the internal investigation into her concerns was compromised because the investigation outcome was signed by an individual Plaintiff had complained about.

30. Plaintiff further alleges that the investigation was not impartial and that her concerns were not meaningfully addressed.

31. On February 24, 2025, Plaintiff alleges Defendant Ebony Williams called Plaintiff "hostile" and "nasty" during a meeting with Human Resources present, causing physical and emotional distress.

32. Plaintiff alleges she was denied workplace support and treated differently than similarly situated non-Black employees in disciplinary matters, workplace expectations, and access to support resources.

33. Plaintiff further alleges she was assigned supervisory oversight without disclosure and later learned of the arrangement after an extended period of time.

34. Plaintiff alleges that after a client died by suicide, she did not receive the same counseling, debriefing, or support resources provided to other staff members.

35. Plaintiff alleges that after filing complaints regarding Defendant Ebony Williams, Williams was later assigned to oversee Plaintiff's corrective coaching process.

36. Plaintiff alleges that the cumulative and escalating conduct described herein — including retaliatory discipline issued the same day as her protected complaint, assignment of the individual she complained about to oversee her corrective process, elimination of earned compensation, undisclosed supervisory surveillance, denial of post-trauma support resources provided to other staff, and verbal aggression by a supervisor in the presence of Human Resources — created working conditions that were objectively intolerable and designed to force Plaintiff's departure.

36a. Plaintiff further alleges that the issuance of a Written Warning and Performance Improvement Plan in rapid succession — within four days of her formal complaint — signaled to Plaintiff that termination was imminent and inevitable regardless of her performance.

36b. Plaintiff alleges she raised her concerns through internal complaints and escalated to the Board of Directors on July 16, 2025, and that each attempt to seek relief resulted in further retaliation rather than remediation, leaving her with no meaningful avenue to address the discriminatory and retaliatory conditions.

37. Having exhausted internal remedies without relief, and facing escalating retaliation, imminent termination, elimination of compensation, and a hostile supervisory structure she had no ability to change, Plaintiff resigned on January 11, 2026.

38. Plaintiff alleges the resignation was not voluntary. The working conditions created by Defendants were so severe and pervasive — and so directly tied to her protected race and protected activity — that a reasonable person in her position would have had no meaningful choice but to resign.

39. The Michigan Unemployment Insurance Agency determined on two separate occasions that Plaintiff was not disqualified from benefits, finding that her separation was not her

fault — consistent with Plaintiff's allegation that the resignation was compelled by Defendants' conduct. Every Woman's Place contested both determinations.

40. Plaintiff alleges that Defendants' conduct has caused ongoing harm to her professional standing and employability within the Muskegon community. Despite diligent efforts, Plaintiff has been unable to secure comparable employment in the local area following her resignation on January 11, 2026.

41. Prior to her resignation, and while the retaliatory conduct was actively ongoing, Plaintiff applied for a position at a local organization. Plaintiff alleges, on information and belief, that a personal relationship existed between Defendant Ebony Williams and a member of the hiring board at that organization. Plaintiff alleges that this relationship, in a small and professionally interconnected community, created a substantial risk of interference with her ability to secure alternative employment — a risk that materialized when she did not obtain the position. This circumstance further supported Plaintiff's conclusion that continued employment at Every Woman's Place was untenable and that even her available escape routes were compromised by Defendants' conduct and their community relationships.

42. Plaintiff alleges, on information and belief, that the reputational harm caused by Defendants' retaliatory conduct — including the issuance of a Written Warning, a Performance Improvement Plan, and the circumstances surrounding her departure — has been communicated within the Muskegon professional community in a manner that has materially impaired her ability to obtain comparable employment.

43. Plaintiff further alleges that her inability to secure local employment constitutes ongoing economic harm directly and foreseeably caused by Defendants' unlawful conduct, in a small community where professional networks are closely interconnected and reputational harm spreads readily.

## CLAIMS FOR RELIEF

### COUNT I — RETALIATION

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3

(Against All Defendants)

44. Plaintiff incorporates all preceding paragraphs.

45. Plaintiff engaged in protected activity by reporting workplace concerns and opposing conduct believed to be discriminatory and unlawful.

46. Following Plaintiff's protected activity, Defendants subjected Plaintiff to adverse employment actions including a Written Warning on the same day as her complaint, a Performance Improvement Plan four days later, elimination of earned compensation, reclassification to exempt status, and other retaliatory conduct that escalated with each instance of protected activity.

47. Defendants' conduct constitutes retaliation in violation of Title VII.

### COUNT II — RACE DISCRIMINATION

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

(Against All Defendants)

48. Plaintiff incorporates all preceding paragraphs.

49. Plaintiff is a member of a protected class.

50. Plaintiff alleges differential treatment with respect to compensation, discipline, workload, and workplace support compared to similarly situated non-Black employees.

51. Defendants' conduct constitutes race discrimination in violation of Title VII.

### COUNT III — HOSTILE WORK ENVIRONMENT

52. Plaintiff incorporates all preceding paragraphs.

53. Plaintiff alleges that Defendants subjected her to severe and pervasive conduct that created a hostile and emotionally unsafe work environment based on race and protected activity.

54. Defendants' conduct violated Title VII.

## COUNT IV — CONSTRUCTIVE DISCHARGE

### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

(Against All Defendants)

55. Plaintiff incorporates all preceding paragraphs.

56. An employer violates Title VII when it deliberately makes working conditions so intolerable that a reasonable employee would feel compelled to resign. Pa. State Police v. Suders, 542 U.S. 129 (2004).

57. Plaintiff alleges that Defendants engaged in a pattern of deliberate, escalating conduct — including same-day retaliatory discipline following her protected complaint, a Performance Improvement Plan issued four days later, elimination of earned wages, assignment of her complained-about supervisor to oversee her corrective process, denial of post-trauma support extended to other staff, and verbal aggression in the presence of Human Resources — that made continued employment objectively intolerable.

58. Plaintiff alleges that Defendants' conduct was not incidental or isolated but was a sustained campaign that accelerated after each instance of protected activity, demonstrating deliberate intent to force Plaintiff's resignation.

59. Plaintiff further alleges that before her resignation, she applied for alternative local employment and discovered, on information and belief, that a personal relationship between Defendant Ebony Williams and a member of the hiring board at that organization had compromised her application — leaving her with no viable exit from her intolerable working conditions.

60. A reasonable person in Plaintiff's position — facing imminent termination, eliminated compensation, a compromised supervisory structure, no meaningful internal remedy, and blocked external employment opportunities — would have felt compelled to resign.

61. Plaintiff's resignation on January 11, 2026 was the direct and foreseeable result of Defendants' unlawful conduct.

62. As a direct result of Defendants' constructive discharge, Plaintiff suffered lost wages, lost benefits, lost earning capacity, ongoing inability to secure comparable local employment, emotional distress, and damage to her professional standing.

## COUNT V — RACE DISCRIMINATION

### Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2202

(Against All Defendants)

63. Plaintiff incorporates all preceding paragraphs.

64. The Elliott-Larsen Civil Rights Act prohibits discrimination in employment on the basis of race. MCL § 37.2202.

65. Plaintiff alleges discrimination through unequal compensation, unequal discipline, disproportionate workload expectations, and differential application of workplace policies compared to similarly situated non-Black employees.

66. As a direct result, Plaintiff suffered financial harm, emotional distress, and damage to professional standing.

COUNT VI — RETALIATION

Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2701

(Against All Defendants)

67. Plaintiff incorporates all preceding paragraphs.

68. The Elliott-Larsen Civil Rights Act prohibits retaliation against an employee who opposes a civil rights violation or participates in a related proceeding. MCL § 37.2701.

69. Plaintiff alleges that after raising concerns about discriminatory treatment and compensation practices, Defendants subjected Plaintiff to disciplinary action, a performance improvement plan, elimination of earned compensation, and conditions that forced resignation.

70. Defendants' conduct constitutes unlawful retaliation under the ELCRA.

## COUNT VII — HOSTILE WORK ENVIRONMENT

Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2202(1)(a) and MCL § 37.2103(j)

(Against All Defendants)

71. Plaintiff incorporates all preceding paragraphs.

72. MCL § 37.2202(1)(a) prohibits an employer from discriminating against an individual with respect to the terms, conditions, or privileges of employment because of race. A race-based hostile work environment constitutes discrimination affecting the terms and conditions of employment within the meaning of this section. MCL § 37.2103(j) defines "race" broadly to include traits historically associated with race.

73. A hostile work environment exists where discriminatory conduct is sufficiently severe or pervasive to create an intimidating, hostile, or offensive employment environment that substantially interferes with employment or psychological well-being, assessed under the totality of the circumstances from the perspective of a reasonable person in the plaintiff's position. See Radtke v. Everett, 442 Mich. 368 (1993); Quinto v. Cross & Peters Co., 451 Mich. 358 (1996).

74. Plaintiff alleges that Defendants created and maintained a hostile work environment based on race through verbal aggression, retaliatory discipline, exclusion from support resources extended to non-Black employees, undisclosed supervisory surveillance, and assignment of the individual complained about to oversee Plaintiff's corrective process.

75. Plaintiff alleges this conduct was severe and pervasive and unreasonably interfered with job performance, resulting in emotional distress, physical health consequences, financial harm, and constructive discharge.

## COUNT VIII — UNPAID WAGES AND FRINGE BENEFITS

Michigan Payment of Wages and Fringe Benefits Act, MCL § 408.471 et seq.

(Against Defendant Every Woman's Place)

76. Plaintiff incorporates all preceding paragraphs.

77. The Michigan Payment of Wages and Fringe Benefits Act requires employers to pay all earned wages and fringe benefits on regularly scheduled paydays and upon separation from employment. MCL § 408.474; MCL § 408.475.

78. Plaintiff alleges that Every Woman's Place failed to pay earned compensation in two respects: (a) comp time accrued at the rate of one hour per on-call day from June 3, 2022 through November 7, 2025, as promised in the June 2019 Staff Member Handbook, totaling approximately $33,392.00; and (b) the weekly on-call stipend of approximately $133.00, announced by organizational email on October 11, 2022 and earned through performance of on-call duties, but paid fewer than ten times between November 1, 2022 and January 11, 2026, totaling approximately $21,280.00 in unpaid stipends.

79. The comp time policy and weekly stipend constitute fringe benefits and earned wages within the meaning of MCL § 408.471(e) and (f).

80. Every Woman's Place's failure to pay these earned amounts constitutes a violation of the PWFBA, entitling Plaintiff to unpaid wages, penalties, and attorney fees as provided by MCL § 408.481 and MCL § 408.488.

## COUNT IX — RETALIATION FOR WAGE COMPLAINTS

### Michigan Payment of Wages and Fringe Benefits Act, MCL § 408.483

(Against All Defendants)

81. Plaintiff incorporates all preceding paragraphs.

82. MCL § 408.483(1) prohibits an employer from discharging or discriminating against an employee because the employee filed a complaint, instituted or caused to be instituted a proceeding under the Act, or exercised a right afforded under the Act.

83. Plaintiff engaged in protected activity under the PWFBA by raising concerns about the comp time policy and withheld stipend payments.

84. Following Plaintiff's wage-related complaints, Defendants issued a Written Warning, a Performance Improvement Plan, eliminated Plaintiff's stipend compensation, and revised the Staff Member Handbook to remove the comp time policy — all adverse employment actions causally connected to Plaintiff's protected wage complaints.

85. Defendants' conduct constitutes unlawful retaliation in violation of MCL § 408.483, entitling Plaintiff to back pay and damages.

## COUNT X — UNPAID OVERTIME AND UNLAWFUL EXEMPTION RECLASSIFICATION

### Fair Labor Standards Act, 29 U.S.C. §§ 207 and 213(a)(1)

(Against Defendant Every Woman's Place)

86. Plaintiff incorporates all preceding paragraphs.

87. The Fair Labor Standards Act requires that covered employees receive overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1).

88. Plaintiff alleges that her on-call duties constituted compensable hours worked under the FLSA. Plaintiff was required to remain continuously available 24 hours a day, 7 days a week, 365 days a year and respond within approximately 15 minutes of being contacted. Plaintiff received calls at all hours including midnight, 1:00 a.m., 2:00 a.m., 3:00 a.m., and 6:00 a.m. Plaintiff was required to remain in close proximity at all times and could not travel without using paid time off. Plaintiff was required to leave personal activities including movies and family events to respond to calls. Plaintiff built and trained the entire on-call rotation team, yet was the sole responder for all calls. The on-call obligations ran concurrently with Plaintiff's regular work hours meaning Plaintiff could receive a crisis call during the workday and again that same evening. Plaintiff was unable to effectively use on-call time for personal purposes due to the frequency, unpredictability, and immediacy of response required. Compensable on-call time is determined by the degree to which the employee may effectively use the time for personal purposes. See 29 C.F.R. § 785.17; Armour & Co. v. Wantock, 323 U.S. 126 (1944).

89. In weeks where Plaintiff's on-call and crisis-response hours, combined with her regular duties, exceeded forty hours, she was not compensated at the required overtime rate of one and one-half times her regular rate of pay.

90. Every Woman's Place reclassified Plaintiff's position as "exempt" in the revised handbook issued November 7, 2025, purportedly relying on the executive, administrative, or professional exemption under 29 U.S.C. § 213(a)(1). To qualify for this exemption, an employer must demonstrate that the employee's actual job duties satisfy the applicable duties test under 29 C.F.R. Part 541 and that the employee is compensated on a salary basis at not less than $684.00 per week.

91. Plaintiff alleges that Every Woman's Place failed to conduct a good-faith analysis of whether her actual job duties satisfied the applicable exemption criteria, and that the reclassification was improper, retaliatory, and designed to deprive Plaintiff of earned

overtime compensation and accrued benefits.

92. Every Woman's Place's failure to pay required overtime compensation constitutes a violation of the FLSA, entitling Plaintiff to unpaid overtime wages, an equal amount in liquidated damages, and attorney fees pursuant to 29 U.S.C. § 216(b).

## RELIEF REQUESTED

WHEREFORE, Plaintiff Shawnda Jackson respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants and award:

A. Compensatory damages, including approximately $33,392.00 in unpaid comp time (June 3, 2022 through November 7, 2025);

B. Compensatory damages for withheld weekly on-call stipends, totaling approximately $21,280.00 (November 1, 2022 through January 11, 2026, less ten weeks received);

C. Lost wages and benefits from the date of constructive discharge on January 11, 2026, including the ongoing wage gap between Plaintiff's prior compensation and unemployment benefits received, full lost wages upon exhaustion of unemployment benefits, and front pay for future lost earnings in lieu of reinstatement, as Plaintiff alleges that Defendants' conduct has rendered return to employment with Defendants impossible;

D. Damages for ongoing loss of earning capacity and impaired future employability resulting from harm to Plaintiff's professional reputation in the Muskegon community caused by Defendants' unlawful conduct, including but not limited to lost future wages and diminished career opportunities;

E. Damages for emotional distress and pain and suffering;

F. Damages for physical health consequences resulting from Defendants' conduct;

G. Punitive damages as permitted by law;

H. All remedies available under the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2801;

I. Unpaid overtime wages and an equal amount in liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b);

J. Unpaid wages, fringe benefits, and penalties pursuant to the Michigan Payment of Wages and Fringe Benefits Act, MCL § 408.481 and § 408.488;

K. Attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and 29 U.S.C. § 216(b);

L. Pre-judgment and post-judgment interest as permitted by law;

M. Costs, fees, and any additional relief deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Shawnda Jackson, Pro Se
1387 Creek Dr., Apartment A
Muskegon, Michigan 49441
Telephone: (404) 805-3253
Email: wezmichael@gmail.com

Date: May 21, 2026